UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X

SAEEDA A. MAHMUD, M.D.,

Plaintiff,

- against -

WALTER KAUFMANN, M.D., JEFF AUERBACH, M.D., JANE BROOKS, M.D., GOPAL SHAH, M.D. and DAVID BRODY, M.D., Individually, Jointly and Severally,

Defendants.

- - - - - - - - - - - - - - - - - - - - X

05 Civ. 8090 (WCC)

**ECF CASE**

**OPINION AND ORDER**

**A P P E A R A N C E S :**

LAW OFFICE OF CARL E. PERSON
**Attorneys for Plaintiff**
325 W. 45th St., Suite 201
New York, New York 10036

CARL E. PERSON, ESQ.

Of Counsel

ADELMAN, SHEFF & SMITH, LLC
180 Admiral Cochrane Drive, Ste. 370
Annapolis, Maryland 21401

S. ALLAN ADELMAN, ESQ.
MICHAEL I. JOSEPH, ESQ.

Of Counsel

- and -

JEFFERS & IRELAND, P.C.
55 Walls Drive
Fairfield, Connecticut 06824

STEPHEN M. COWHERD, ESQ.

Of Counsel

**Attorneys for Defendants**

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff Saeeda A. Mahmud, M.D., a native of Pakistan, brought this action against defendants Walter Kaufmann, M.D., Jeff Auerbach, M.D., Jane Brooks, M.D., Gopal Shah, M.D. and David Brody, M.D., (collectively, "defendants") arising from the denial of her medical staff privileges at Bon Secours Community Hospital (the "Hospital")[1] and Orange Regional Medical Center ("ORMC").[2] Plaintiff alleges that defendants failed to renew her contract of affiliation with the Hospital and subsequently thwarted her efforts to contract with ORMC for admitting privileges, both on the basis of her race and in a concerted effort to limit competition in the market for certain specialized medical services in the area of Port Jervis, New York. Plaintiff brought claims pursuant to 42 U.S.C. § 1981, the New York Human Rights Law, New York Executive Law §§ 290, *et seq*. (the "NYSHRL"), the Sherman Antitrust Act, 15 U.S.C. §§ 1, *et seq*., and New York General Business Law § 340 ("NYGBL"), as well as common law claims for interference with prospective economic advantage and *prima facie* tort.

Defendants moved to dismiss plaintiff's ten-count Complaint in its entirety pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In an Opinion and Order dated September 27, 2006, this Court dismissed plaintiff's third cause of action under the NYSHRL and her eighth and tenth causes of action for *prima facie* tort. Remaining are plaintiff's claims that defendants: (1) caused the Hospital to elect not to renew her contract of affiliation with it on the account of her race in violation of 42 U.S.C. § 1981; (2) prevented her from subsequently contracting with ORMC on the basis of her race in violation of 42 U.S.C. § 1981 and the NYSHRL;

---

[1] The Hospital is located in Port Jervis, New York. (*See* Am. Compl. ¶ 5.)

[2] ORMC is located in Middletown, New York.

(3) unlawfully interfered with plaintiff's prospective business economic advantage; and (4) conspired to restrict plaintiff and other physicians from competing in the market for certain specialized medical services in violation of the Sherman Antitrust Act and NYGBL. Defendants now move for reconsideration of our prior Opinion and Order. For the following reasons, defendants' motion is granted in part and denied in part.

**BACKGROUND**

The facts relevant to this lawsuit are set forth in detail in our prior Opinion and Order, familiarity with which is presumed. In brief, plaintiff alleges that defendants caused the Hospital to elect not to renew her contract of affiliation with the Hospital, subsequently interfered with her efforts to gain admitting privileges at ORMC and continually discredited plaintiff, including informing her patients that she was incompetent. Plaintiff alleges that defendants' actions were motivated by their racial animus towards her and their desire to limit competition with their medical practices in the Port Jervis area. Defendants now seek reconsideration of our prior Opinion and Order denying defendants' motion to dismiss plaintiff's: (1) first cause of action alleging that defendants caused the Hospital not to renew her contract of affiliation on the basis of her race in violation of 42 U.S.C. § 1981; (2) second and third causes of action alleging that defendants thwarted her efforts to gain admitting privileges at ORMC on the basis of her race in violation of 42 U.S.C. § 1981and the NYSHRL; and (3) sixth and seventh causes of action pursuant to the Sherman Antitrust Act and the NYGBL.

## DISCUSSION

### I. Legal Standard

A motion for reconsideration is governed by Local Rule 6.3[3] and should be granted only when the moving party demonstrates that the court overlooked "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 00 Civ. 1898, 2001 U.S. Dist. LEXIS 13886, at *1 (S.D.N.Y. Sept. 7, 2001) (internal quotation marks and citations omitted). The decision of whether to grant or deny a motion for reconsideration lies within "the sound discretion of a district court judge." *Bennett v. Watson Wyatt & Co.*, 156 F. Supp. 2d 270, 271-72 (S.D.N.Y. 2001) (quoting *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)). The Second Circuit has stated that "[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied . . . ." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) ("'reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'") (internal citation omitted). Accordingly, in the district courts, "[r]econsideration is .

---

[3] Local Rule 6.3 provides:

> A notice of motion for reconsideration or reargument of a court order determining a motion shall be served within ten (10) days after the entry of the court's determination of the original motion, or in the case of a court order resulting in a judgment, within ten (10) days after the entry of the judgment. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. The time periods for the service of answering and reply memoranda, if any, shall be governed by Local Civil Rule 6.1(a) or (b), as in the case of the original motion. No oral argument shall be heard unless the court directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

(Emphasis in original removed.)

. . narrowly construed and strictly applied so as to avoid repetitive arguments." *Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, No. 00 Civ. 2474, 2000 U.S. Dist. LEXIS 12968, at *2 (S.D.N.Y. Sept. 8, 2000) (internal quotation marks omitted). However, a court may grant a motion for reconsideration "to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted); *see also Seippel v. Jenkens & Gilchrist, P.C.*, No. 03 Civ. 6942, 2004 U.S. Dist. LEXIS 21589, at *1 (S.D.N.Y. Oct. 26, 2004); *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (Conner, J.), *aff'd*, 241 F.3d 135 (2d Cir. 2001) ("Local Civil Rule 6.3 provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice.").

## II. Reconsideration of this Court's Denial of Defendants' Motion to Dismiss Plaintiff's First Cause of Action Pursuant to 42 U.S.C. § 1981 As Time Barred

Defendants first request that this Court reconsider whether plaintiff's first cause of action, brought pursuant to 42 U.S.C. § 1981, is barred by the applicable statute of limitations. Specifically, plaintiff's first cause of action alleges that defendants caused the Hospital to elect not to renew her contract of affiliation with it on the account of her race in violation of 42 U.S.C. § 1981. In our prior Opinion and Order, we held that the applicable statute of limitations was four years. *See* 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."). We concluded that, because plaintiff's first cause of action under § 1981 arises from incidents that occurred from approximately 1996 through May 2002 and her action was filed on September 19, 2005, plaintiff's claim was timely under the four-year period of

limitations. On their motion for reconsideration, however, defendants contend that plaintiff's § 1981 claim is time barred as a three-year statute of limitations applies to it, citing *Jones v. Railroad Donnelly and Sons Company*, 541 U.S. 369, 382 (2004). We agree.

In *Jones*, the Supreme Court held that the four-year statute of limitations found in 28 U.S.C. § 1658(a) does not apply to claims arising under the pre-1991 42 U.S.C. § 1981.[4] *See* 541 U.S. at 382-83. The Supreme Court explained:

> Concerns about settled expectations provide a valid reason to reject an interpretation of § 1658 under which any new amendment to federal law would suffice to trigger the 4-year statute of limitations, regardless of whether the plaintiff's claim would have been available – and subject to a state statute of limitations – prior to December 1, 1990. Such concerns do not, however, carry any weight against the reading of § 1658 . . . under which the catchall limitations period applies only to causes of action that *were not available* until after § 1658 was enacted. If a cause of action did not exist prior to 1990, potential litigants could not have formed settled expectations as to the relevant statute of limitations that would then be disrupted by application of § 1658. We conclude that a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990 – and therefore is governed by § 1658's 4-year statute of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment.

*Id.* at 381-82 (emphasis in original). In *Jones*, the plaintiffs brought claims for hostile working environment, wrongful termination and failure to transfer, all pursuant to 42 U.S.C. § 1981. The Supreme Court concluded that the plaintiffs' claims were not viable under § 1981 prior to its amendment in November 1991, but that the 1991 amendments to § 1981 enlarged the scope of liability under the statute to include their claims. *See id.* at 383. The Court held that "[b]ecause [plaintiffs'] hostile work environment, wrongful termination, and failure to transfer claims did not allege a violation of the pre-1990 version of § 1981 but did allege violations of the amended statute, those claims 'ar[ose] under' the amendment to § 1981 contained in the 1991 Act." *Id.* Accordingly,

---

[4] 42 U.S.C. § 1981 was amended on November 21, 1991. *See* Pub. L. 102-166, § 1745 (1991).

the Supreme Court applied the four-year statute of limitations of § 1658 to the plaintiffs' claims. *See id.*

In determining whether § 1658 applies, courts must decide whether the plaintiff's "claim[s] ar[ise] under the amended or unamended version of" § 1981. *See id.* at 372, 383. "As first enacted, § 1981 provided in relevant part that 'all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Id.* (quoting 14 Stat. 27); *see also* PUB. L. 102-166, § 1745. "The most obvious feature of the provision is the restriction of its scope to forbidding discrimination in the 'mak[ing] and enforce[ment]' of contracts alone." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989) (alterations in original). The Supreme Court has held that the unamended version of § 1981 provides no relief "[w]here an alleged act of discrimination does not involve the impairment of one of these specific rights . . . ." *See id.* ("Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts.").

In the present case, plaintiff's first § 1981 claim alleges that defendants, through their *de facto* control of the Hospital, influenced the Hospital to refuse to enter into a new contract of affiliation with plaintiff after her original contract expired in July 2001 as a result of their racial animus towards her. (*See* Am. Compl. ¶¶ 17, 34, 47.) Plainly, this claim addresses plaintiff's rights to make contracts and therefore arises under the original statute. Accordingly, plaintiff's first cause of action is subject to a three-year statute of limitations. *See Jones*, 541 U.S. at 382 (holding that claims arising under the pre-1991 § 1981 are subject to the "'borrowed' limitations periods" from state law); *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 564-65 (E.D.N.Y. 2006)

("[C]laims arising under section 1981 prior to November 21, 1991 remain subject to the three-year statute of limitations."); *see also Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years."); *Sleigh v. Charlex, Inc.*, No. 03 Civ. 1369, 2004 WL 2126742, at *3 (S.D.N.Y. Sept. 14, 2004). Because plaintiff's claim arose, at the latest, in May 2002 and the action was filed on September 19, 2005, plaintiff's first cause of action is untimely under the applicable three-year statute of limitations and therefore must be dismissed.

**III. Reconsideration of this Court's Denial of Defendants' Motion to Dismiss Plaintiff's Second Cause of Action for Failure to State a Claim Pursuant to 42 U.S.C. § 1981**

Defendants next request that this Court reconsider their motion to dismiss plaintiff's second cause of action, which alleges that, because of their racial animus toward plaintiff, defendants prevented plaintiff from entering into a contract with ORMC in violation of 42 U.S.C. § 1981.[5] On their present motion, defendants assert two arguments, both of which we explicitly rejected in our prior Opinion and Order. Accordingly, defendants' motion for reconsideration of their motion to dismiss plaintiff's second cause of action is denied. *See, e.g.*, *Shrader*, 70 F.3d at 257 ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

Nonetheless, assuming, *arguendo*, the propriety of defendants' arguments, their motion still must be denied. First, defendants argue that plaintiff failed to allege sufficient facts that defendants

[5] Plaintiff's second cause of action arose in June 2004, and defendants concede that it is not barred by the applicable statute of limitations. (*See* Defs. Mem. Supp. Mot. Recons. at 12.)

intended to discriminate against plaintiff on the basis of her race. In order to assert a claim under 42 U.S.C. § 1981, a plaintiff must allege that: (1) she is a member of a racial minority; (2) the defendants had an intent to discriminate against her on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, including the making and enforcing of contracts. *See, e.g.*, *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). To survive a motion to dismiss, "the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994); *see also Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988). "It is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court would find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

It is equally well-settled, however, that FED. R. CIV. P. 8[6] precludes the application of a heightened pleading standard for any claims other than those enumerated in FED. R. CIV. P. 9(b). *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 514-15 (2002). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz*, 534 U.S. at 514 (alterations in original) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002). "Thus, a complaint

---

[6] FED. R. CIV. P. 8(a) provides: "A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."

is sufficient if it gives '"fair notice of what the plaintiff's claim is and the grounds upon which it rests."'" *Phelps*, 308 F.3d at 186 (internal citations omitted). In the present case, plaintiff's Amended Complaint satisfies the requirements of FED. R. CIV. P. 8(a),[7] and although we find plaintiff's allegations to be unclear in some respects, they are sufficient to satisfy the notice pleading requirements, which "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512; *see also Leatherman v. Tarrant County Narcotics Intelligence & Coordinators Unit*, 507 U.S. 163, 168-69 (1993).

Second, defendants contend that plaintiff failed to allege the existence of a contractual relationship with which defendants interfered. (*See* Defs. Mem. Supp. Mot. Recons. at 11.) Indeed, "[a]ny claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship[]' . . . under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1249

---

[7] In the present case, plaintiff alleges that: (1) she is of Pakistani descent; (2) in 1996, she was persuaded by affiliates of the Hospital to establish a cardiology practice in Port Jervis, New York with admitting privileges at the Hospital; (3) after the September 11, 2001 terrorist attacks, she was subjected to frequent racist remarks, including "foreigner," "dirty foreigner" and "bomber," by Hospital employees and medical staff; (4) upon plaintiff's complaints regarding her frequent subjection to racist comments, no remedial action was taken; (5) defendants, without justification, initiated a review of the medical records of plaintiff's patients; (6) defendants advised plaintiff that they found her care to be "lacking," even though a "peer review" of the same records indicated that her care was "proper and appropriate"; (7) defendants, without justification, subjected her to scrutiny by the Committee on Physicians Health of the New York Medical Society, which found that plaintiff was competent to serve as a licensed physician; (8) defendants "forced" her to take "a medical leave of absence from the Hospital under threat of initiating charges that would lead to revocation of her medical license"; (9) defendants treated her differently from similarly situated individuals by using her failure to timely renew her application for admitting privileges with the Hospital as "a lever against her"; (10) defendants influenced the Hospital to elect not to renew plaintiff's admitting privileges with the Hospital on the account of her race; (11) in May 2003, plaintiff applied for "a contract of affiliation" with ORMC and "defendants gave incorrect and unsubstantiated information to ORMC, undermining her efforts to enter into contracts with it" as a result of their racial animus towards plaintiff; and (12) defendants made disparaging remarks about plaintiff to her patients. (*See* Am. Complt.)

(2006) (internal citation omitted; footnote omitted). "Section 1981 offers relief when racial discrimination blocks *the creation of a contractual relationship*, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." *Id.* at 1250 (emphasis added). With any reasonable reading of the Amended Complaint, plaintiff alleges that defendants prevented her from contracting with ORMC on the basis of her race.[8] As we held in our prior Opinion and Order, these allegations are sufficient. *See Hamad v. Nassau County Med. Ctr.*, 191 F. Supp. 2d 286, 300 (E.D.N.Y. 2000) (finding that the plaintiff doctor adequately pled a § 1981 cause of action by alleging that he was, *inter alia*, denied admitting privileges).

## IV. Reconsideration of this Court's Denial of Defendants' Motion to Dismiss Plaintiff's Fourth Cause of Action for Failure to State a Claim Pursuant to the NYSHRL

Defendants argue that this Court erred in failing to dismiss plaintiff's claim for racial discrimination under the NYSHRL. In particular, defendants contend that plaintiff's claim must fail because she has not alleged that she sought an employer-employee relationship with ORMC. NYSHRL § 296(1)(a) provides:

> It shall be an unlawful discriminatory practice . . . [f]or an *employer* or licensing agency, because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

[8] Although we do not foreclose the possibility that an arrangement between a physician and a hospital regarding admitting or clinical privileges may not be a contractual relationship, *see Van v. Anderson*, 199 F. Supp. 2d 550, 562-65 (N.D. Tex. 2002), plaintiff has alleged sufficient facts of the existence of a prospective contractual relationship between plaintiff and ORMC. For example, plaintiff refers to the intended arrangement with ORMC as a "contract of affiliation." (*See* Am. Complt. ¶¶ 38, 42.)

(Emphasis added.) Moreover, the Second Circuit has held that § 296(6) of the NYSHRL, which provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so[,]" offers a basis for employee liability for employees who "actually participate[] in the conduct giving rise to a discrimination claim . . . ." *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995).

It is clear that the NYSHRL only prohibits racial discrimination in the traditional employment context. *See Scott v. Mass. Mut. Life Ins. Co.*, 86 N.Y.2d 429, 433, 657 N.E.2d 769, 771, 633 N.Y.S.2d 754, 756 (1995); *Murphy v. ERA United Realty*, 251 A.D.2d 469, 470, 674 N.Y.S.2d 415, 416 (2d Dep't 1998) ("It has been established that Executive Law § 296(1)(a) only governs discrimination in the traditional employer-employee relationship and not in the employment of independent contractors.") (internal citation omitted); *see also Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000) ("[T]he NYHRL cover[s] 'employees,' not independent contractors."); *Kilkenny v. Greenberg Traurig, LLP*, No. 05 Civ. 6578, 2006 WL 1096830, at *4 (S.D.N.Y. Apr. 26, 2006) ("An employer-employee relationship is required to sustain a claim under . . . the NYHRL . . . ."). In the present case, however, plaintiff does not allege that she or defendants were employees or prospective employees of ORMC, but rather, she claims that she merely applied for a contract of affiliation to gain admitting privileges there. Moreover, plaintiff has conceded that she was not seeking an employment relationship with ORMC. (*See* Pl. Mem. Opp. Mot. Dismiss at 3 ("Whatever Plaintiff's relationship with these hospitals may be, Plaintiff concedes that it is not one of an employer/employee.").) Accordingly, plaintiff's NYSHRL claim must be dismissed.

## V. Reconsideration of this Court's Denial of Defendants' Motion to Dismiss Plaintiff's Sixth Cause of Action for Failure to State a Claim Pursuant to the Sherman and Clayton Antitrust Acts

Defendants next request that this Court reconsider their motion to dismiss plaintiff's federal antitrust claim. As explained in our prior Opinion and Order, "[t]o withstand a motion to dismiss, the plaintiff in a Sherman Antitrust Conspiracy claim must allege (1) concerted action; (2) by two or more persons; (3) that unreasonably restrains interstate or foreign trade or commerce." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 894 F. Supp. 703, 710 (S.D.N.Y. 1995). Defendants contend that plaintiff cannot allege, as a matter of law and fact, that defendants violated the Sherman Antitrust Act by conspiring among themselves.[9] We disagree.

It is well-established that the Sherman Antitrust Act does not apply to concerted action among officers or employees of the same enterprise acting as such. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984); *Schwimmer v. Sony Corp. of Am.*, 677 F.2d 946, 953 (2d Cir.), *cert. denied*, 459 U.S. 1007 (1982); *Reddy v. Puma*, No. 1:06 CV 1283, 2006 WL 2711535, at *6 (E.D.N.Y. Sept. 21, 2006) ("Where all the actors work inside the walls of a single enterprise, a claim against them under Section 1 will fail under what is often referred to as the intra-corporate (or intraenterprise) conspiracy doctrine."); *Carmody v. City of New York*, No. 05 Civ. 8084, 2006 WL 1283125, at *6 (S.D.N.Y. May 11, 2006) ("[I]ntra-corporate conspiracy doctrine . . . states that individuals of a single entity that act within the scope of their employment cannot conspire with each other."). As the Supreme Court explained:

---

[9] Although defendants do not move for reconsideration of whether plaintiff alleged an antitrust injury, it is notable that plaintiff's Amended Complaint alleges harm not only to her practice, but to physicians generally in the Port Jervis area specializing in cardiology, oncology and gastroenterology, as well as to patients in that area by severely limiting their choice of competing providers. (*See* Am. Compl. ¶¶ 56, 57A.)

> The distinction between unilateral and concerted conduct is necessary for a proper understanding of the terms "contract, combination . . . or conspiracy" in § 1. Nothing in the literal meaning of those terms excludes coordinated conduct among officers or employees of the same company. But it is perfectly plain that an internal "agreement" to implement a single, unitary firm's policies does not raise the antitrust dangers that § 1 was designed to police. The officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals. Coordination within a firm is as likely to result from an effort to compete as from an effort to stifle competition. In the marketplace, such coordination may be necessary if a business enterprise is to compete effectively. For these reasons, officers or employees of the same firm do not provide the plurality of actors imperative for a § 1 conspiracy.

*Copperweld Corp.*, 467 U.S. at 769.

However, the Second Circuit has expressly held that "member physicians of an independent practice association [are] legally capable of conspiring among themselves" for purposes of the Sherman Antitrust Act. *See Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assoc.*, 996 F.2d 537, 544, (2d Cir.), *cert. denied*, 510 U.S. 947 (1993). The court reasoned that when hospital staff physicians have independent and competing economic interests, they are not a single entity incapable of conspiring as a matter of law. *See id.* "Each doctor practices medicine in his or her own individual capacity; each is a 'separate economic entity potentially in competition with other physicians.'" *Id.* (quoting *Bolt v. Halifax Hosp. Med. Ctr.*, 891 F.2d 810, 819 (11th Cir. 1990)). Applying these principles, the court explained:

> Mohawk Valley is a multi-member association of competing doctors, including radiologists, all of whom are in private practice for themselves and who allegedly joined together to deny Capital access to the HMO's patients. As members of an independent practice association, the doctors are not staff physicians employed by the HMO on a salaried basis, that is, they are not agents of the HMO. Instead, these health care professionals are independent practitioners with separate economic interests. . . . Accordingly, the physicians associated together in Mohawk Valley had the capacity to conspire among themselves much like the members of the medical staff in *Bolt*.

*Id.* at 544-45 (internal citation omitted).

Other circuits have agreed. In *Oksanen v. Page Memorial Hospital*,[10] the Fourth Circuit held that doctors with admitting privileges at a hospital engaging in peer review to decide whether other doctors should be granted privileges have the capacity to conspire against a potential competitor. 945 F.2d 696, 706 (4th Cir. 1991). The court reasoned that "medical staff can be comprised of physicians with independent and at times competing economic interests." *Id.*; *see also Nurse Midwifery Assoc. v. Hibbett*, 918 F.2d 605, 612 (6th Cir. 1990) ("Some courts have held that the intracorporate conspiracy doctrine does not prevent a finding of a conspiracy between a hospital and its medical staff or among the members of the medical staff, because the relationships between a medical staff and a hospital or among a medical staff are different than the relationships between a corporation and its agents or among those agents.") (citing *Weiss v. York Hosp.*, 745 F.2d 786, 813-17 (3d Cir. 1984)).

In *Nurse Midwifery*, the court explained:

> The members of a medical staff are not salaried employees of a hospital but are independent medical practitioners, some in direct competition with each other and with applicants for privileges. There is certainly some danger of anticompetitive decision-making when a group of physicians recommends to the hospital that an applicant who is in competition with those physicians be denied privileges at the hospital.

*Id.* at 614. The court concluded:

> Accordingly, the intracorporate conspiracy doctrine prevents a finding of conspiracy between a hospital and its medical staff but, in certain situations, does not preclude a conspiracy among individual members of the medical staff. . . .
>
> [T]he individual members of a hospital's medical staff are in many cases direct

---

[10] The Second Circuit found the reasoning of *Oksanen* persuasive and adopted it in *Capital Imaging Associates*. *See* 996 F.2d at 544 ("The reasoning of *Bolt* and *Oksanen* is persuasive and we adopt it.").

> competitors with each other. . . . [W]hen competing physicians are making privilege recommendations concerning another competitor, sufficient anticompetitive concerns are raised to warrant a conclusion that the members of the medical staff are not acting as agents of the hospital for purposes of applying the intracorporate conspiracy doctrine to preclude a conspiracy among staff members.

*Id.* (footnote omitted).

In the present case, plaintiff alleges that she and defendants were all "affiliated" with the Hospital and that she, and apparently defendants as well, also had private practices. Plaintiff further claims that defendants had "*de facto* control of the Hospital through their mutually consensual rotation of positions of influence, such as[] Chief of Staff, Medical Director[,] . . . Chief of Medicine[,] in addition to chairing the Credentials, Medical Examinations and Quality Assurance Committees[,]" (*see* Am. Complt. ¶¶ 16, 17) and that "[t]hrough their ability to influence and/or control the allocation of admitting privileges at the Hospital, consulting privileges at the Hospital and through the use of referrals, they control or at least have undue and disproportionate influence over a majority of the other physicians who can vote on such matters at the Hospital." (*See* Am. Complt. ¶ 17.) Thus, in an attempt to limit their competition with plaintiff, defendants allegedly engaged in various acts to publicly discredit her and ultimately cause the Hospital not to renew its contract of affiliation with her. (*See* Am. Complt. ¶¶ 23-26, 28, 29, 30, 31, 32, 34.) Similarly, plaintiff alleges that defendants "gave incorrect and unsubstantiated information to ORMC," causing it not to enter into a contract with plaintiff, and informed plaintiff's patients that she was incompetent and that they had to find a new physician because she had lost her privileges at the Hospital. (*See* Am. Complt. ¶¶ 43, 46.)

At this stage, we cannot conclude, as a matter of law, that plaintiff's allegations, if true, fail to show that defendants are capable of conspiring for purposes of the Sherman Antitrust Act. *See*

*Reddy*, 2006 WL 2711535, at *7 ("As an initial matter, the complaint refers to Dr. Reddy as a staff physician and acknowledges that Dr. Reddy continued to practice in other settings while he worked at Methodist. Further, Dr. Reddy's complaint specifically alleges that defendants Sacchi and Puma 'have independent and competing economic interests' from Methodist. As discussed, such competing economic interests are quite common for doctors working at a hospital and Dr. Reddy's assertion of defendants' competing economic interests separate and apart from their employment by Methodist is enough for the complaint to survive at threshold.") (internal citations omitted); *Johnson v. Nyack Hosp.*, 954 F. Supp. 717, 724 (S.D.N.Y. 1997) ("The degree to which private practitioners functioning in a peer review or staff privileges context may be capable of conspiring depends upon whether their private interests diverge from those of the hospital or the physician who is the focus of attention."). Moreover, plaintiff's complaint sufficiently alleges the actual existence of a conspiracy among the defendants. *See Reddy*, 2006 WL 2711535, at *7 ("In sum, given the allegation of competing economic interests, the wide range of anticompetitive acts alleged against defendants, and the need for further discovery regarding these issues – particularly given the length and breadth of modern medical practices – the Court concludes that defendants are not entitled to dismissal for failure to state a claim.").

Defendants also appear to argue that Kaufmann, a cardiologist, is the only defendant in competition with plaintiff, and that "a conspiracy involving one person is impossible." (*See* Defs. Reply Mem. Supp. Mot. Recons. at 13.) Specifically, defendants state: "It is clear . . . that none of the individual Defendants, with the exception of [] Kaufmann, is alleged to be a competitor of [] Mahmud, and none would have any economic interest in whether her cardiology privileges at [the Hospital] were not renewed." (*See id.*) We are unpersuaded. It is not even entirely clear that

plaintiff was practicing solely as a cardiologist. Nonetheless, plaintiff alleges that *all* defendants conspired with each other, and the fact that defendants' counsel believes that it would not benefit Auerbach, Brooks, Shah and Brody financially to do so is, to say the least, inconsequential, as well as short-sighted. It is unknown at this stage whether they are in some way financially aligned with Kaufmann, who certainly has an economic interest in the denial of plaintiff's admitting privileges at the Hospital and others nearby. We can imagine a plethora of scenarios in which their financial interests could be aligned so that defendants are all effectively in competition with plaintiff, despite the fact that only Kaufmann practices in the same speciality as plaintiff. Under such circumstances, if defendants are able to exclude plaintiff from practicing in the Hospital and those nearby, they would all benefit economically from the reduced competition. *See Bolt*, 891 F.2d at 820. "Of course, should complete discovery show otherwise, defendants are free to move for summary judgment on the essence of the arguments asserted now." *Reddy*, 2006 WL 2711535, at *7.

## VI. Reconsideration of this Court's Denial of Defendants' Motion to Dismiss Plaintiff's Seventh Cause of Action for Failure to State a Claim Pursuant to the NYGBL

Finally, defendants move for reconsideration of their motion to dismiss plaintiff's claim pursuant to the NYGBL, which alleges the same set of facts giving rise to her federal antitrust claim. As plaintiff concedes, it is well-established that NYGBL does not apply to physicians. *See, e.g.*, *People v. Roth*, 52 N.Y.2d 440, 447 (1981); *Purgess v. Sharrock*, 806 F. Supp. 1102, 1106 n.4 (S.D.N.Y. 1992). (*See also* Pl. Mem. Opp. Mot. Recons. at 13.) Accordingly, plaintiff's seventh cause of action pursuant to the NYGBL is dismissed.

## CONCLUSION

For all of the foregoing reasons, the motion for reconsideration of defendants' motion to dismiss filed by Walter Kaufmann, M.D., Jeff Auerbach, M.D., Jane Brooks, M.D., Gopal Shah, M.D. and David Brody M.D. (collectively, "defendants") is granted with respect to plaintiff's: (1) first cause of action pursuant to 42 U.S.C. § 1981; (2) fourth cause of action pursuant to the New York Human Rights Law, New York Executive Law §§ 290, *et seq.*; and (3) seventh cause of action pursuant to New York General Business Law § 340. Defendants' motion for reconsideration of their motion to dismiss is denied with respect to plaintiff's: (1) second cause of action pursuant to 42 U.S.C. § 1981; and (2) sixth cause of action pursuant to the Sherman Antitrust Act and the Clayton Antitrust Act, 15 U.S.C. §§ 1, *et seq.* Accordingly, the remaining claims are plaintiff's: (1) second cause of action pursuant to 42 U.S.C. § 1981; (2) fifth and ninth causes of action for interference with prospective economic advantage; and (3) sixth cause of action pursuant to the Sherman Antitrust Act and the Clayton Antitrust Act, 15 U.S.C. §§ 1, *et seq.*

SO ORDERED.

Dated: White Plains, New York
June 27, 2007

William C. Conner
Sr. United States District Judge